UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BISHOP T. HAMILTON,

        Plaintiff,

v.

                                    Case No. 18-cv-47-pp

KYLE FERSTL, *et al.*,

        Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 17) AND DISMISSING CASE**

---

On January 9, 2018, the plaintiff, representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. Dkt. No. 1. The court issued a screening order allowing the plaintiff to proceed on an Eighth Amendment deliberate-indifference-to-medical-needs claim against defendants Kyle Ferstl, Travis Haag, Terrence Judd and "Supervising Officer 2," staff at the Columbia Correctional Institution (where the plaintiff was in custody in March of 2017). Dkt. No. 11. The defendants moved for summary judgment on the ground that the plaintiff has failed to exhaust his administrative remedies. Dkt. No. 17. The court grants the motion and dismisses the case.

I. **RELEVANT FACTS**

    A.    <u>Plaintiff's Failure to Comply with Procedural Rules</u>

The plaintiff did not follow Federal Rule of Civil Procedure 56 or Civil Local Rule 56 when he filed his response to the defendants' summary judgment motion. He did not respond to the defendants' proposed findings of

1

fact, as required by Civil L.R. 56(b)(2)(C). District courts, however, must construe leniently submissions made by parties representing themselves, may overlook the plaintiff's noncompliance with a local rule and may construe whatever limited evidence the plaintiff presents in the light most favorable to the plaintiff. See Gray v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016). While the court recognizes that the plaintiff's filings do not comply with the rules, it finds that there is enough evidence for the court to analyze the summary judgment motion. The court has the plaintiff's inmate complaint filing history (dkt. no. 20-1), a copy of the inmate complaint at issue (dkt. no. 28-1), and the plaintiff's opposition brief explaining how he believes he exhausted his administrative remedies (dkt. no. 26). The plaintiff also submitted a complaint declaring under penalty of perjury that the facts in it were true and correct. Dkt. No. 27. This is enough to convert the amended complaint into an affidavit for purposes of summary judgment. See Beal v. Beller, 847 F.3d 897, 901 (7th Cir. 2017); Owens v. Hinsley, 635 F.3d 950, 954-55 (7th Cir. 2011). The court notes, though, that where the plaintiff's limited evidence fails to address the defendants' findings of fact due to the plaintiff's failure to comply with Civil L. R. 56, the court may consider the defendants' facts undisputed under Civil L.R. 56(b)(4).

   B.  <u>Facts Relevant to Exhaustion of Administrative Remedies</u>

  The plaintiff brought a claim under the Eighth Amendment alleging that the defendants were deliberately indifferent to his medical needs because while he was suffering from a diabetic seizure in the early morning of March 3, 2017, the defendants failed to call a nurse or an ambulance. Dkt. No. 1 at 2. The plaintiff says the defendants did not believe he was having a diabetic seizure but instead was "playing." Id.

The defendants assert that the plaintiff didn't file an inmate complaint under the Inmate Complaint Review System related to the defendants' failure to obtain medical care for his diabetic seizure. Dkt. No. 19 at ¶10. The defendants explain that the plaintiff's inmate complaint history report shows no complaints related to the denial of medical care on March 3, 2017. See Dkt. No. 20-1 at 2.

In his response brief, the plaintiff argues that he *did* file an inmate complaint related to the events of March 3, 2017. Dkt. No. 26 at 2. He states that it was complaint number OSCI-2017-14460. Id. The inmate complaint history report lists this complaint as a complaint for "Officer pulled his hair." Dkt. No. 20-1 at 2. The plaintiff acknowledges that the complaint described a hair-pulling incident, but he also states that the complaint asserted that "they" "held [him] down and force jelly and milk down [his] throat." Dkt. No. 26 at 2. He says that the complaint included the fact "that they didn't get a HSU [Health Services Unit] staff to come in. If they would have; [he] would have gotten a sugar shot; or If [he] wood have a ambulance come in I would have got tooken to the hospital for the night." Id. The plaintiff says that he followed all the procedures, and that they defendants can't say that he didn't. Id.

The defendants attached Inmate Complaint OSCI-2017-14460 to their reply brief. Dkt. No. 28-1 at 6. The plaintiff signed it on June 1, 2017 and the complaint was stamped received on June 5/7, 2017. Id. In the "Date of Incident" box, the plaintiff wrote, "March 3, 2017"; in the "Time of Incident" box, he wrote "2:30-3:30 AM." Id. The plaintiff indicated that the incident took place in Unit 8 CCI (Columbia Correctional Institution). Id. When asked to briefly state who or what was the "**ONE**" issue of his complaint, the plaintiff wrote that "[t]here was a dread-lock in my locker from when the officer at CCI

3

held me down and pull my hair ripping my dread lock's all most out." Id. When asked to describe what he did to try to resolve the issue, the plaintiff said that he sent an inmate request to CCI "while at DIC never receive a response." Id. When asked to describe the result of his attempt to resolve this issue, the plaintiff stated, "[n]othing CCI drop the TLU [Temporary Lock Up] saying I was in a diabetic attack from a low blood sugar." Id. When asked for the details surrounding his one issue, the plaintiff stated, "I had a low blood sugar attack at CCI they move me to their intake slash medical unit then sent me to DCI on TIU for the low blood sugar attack they drop it because they found out I didn't do anything wrong. But the[y] pull my hair try to hold me down. Pulling out one whole dread lock and half pulling out another." Id. The complaint does not mention any force-feeding of milk and jelly. It also does not mention the staff failing to contact the Health Services Unit staff or failing to call an ambulance; it says nothing about deficient medical care.

The defendants note that the plaintiff filed this complaint on June 7, 2017 (that is one of the dates it is stamped received). Dkt. No. 28 at ¶3. They argue that even though the plaintiff filed the complaint well over fourteen days from the date of the March 3, 2017 incident, the Inmate Complaint Examiner (ICE) accepted it anyway. Id. On June 12, 2017, the ICE recommended dismissal, and on June 15, 2017, the Reviewing Authority dismissed the complaint. Id. at ¶4. The plaintiff did not appeal the dismissal of the complaint to the Corrections Complaint Examiner. Id. at ¶5. The defendants state that the plaintiff knew about the appellate procedure because his inmate complaint history report shows that he had appealed another inmate complaint (complaint number OSCI-2017-14200) around the same time period. Dkt. No. 20-1 at 2.

4

As noted, the plaintiff says in his response brief that he "follow[ed] all procedure so they can't say I didn't," and that "I've done everything I've been inform I must do. I follow all steps . . . ." Dkt. No. 26 at 2-3.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

### B. Exhaustion of Administrative Remedies

#### 1. *Exhaustion Standard*

The Prison Litigation Reform Act provides in part that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion rule gives prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court, and it produces a "useful administrative record" for the district court to rely on. See Jones v. Bock, 549 U.S. 199, 204 (2007) (citing Woodford v. Ngo, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved much faster by an agency than through litigation in federal court. Woodford, 548 U.S. at 89.

5

The Seventh Circuit "has taken a strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court. Id. "If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted. Id. (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."))

In Wisconsin, to properly exhaust administrative remedies, inmates must file an offender complaint within fourteen calendar days of the event giving rise to the complaint. Wis. Admin. Code §§DOC 310.05, 310.08, 310.09(6). The ICE may accept late filings for good cause shown. Wis. Admin. Code §DOC 310.09(6). The ICE recommends action to a reviewing authority, who then either will dismiss or affirm the complaint. Wis. Admin. Code §§DOC 310.11, 310.12. If the prisoner is unhappy with the finding, he can appeal to the Corrections Complaint Examiner within fourteen days; the CCE will recommend action to the Department of Corrections Secretary. Wis. Admin. Code §§DOC 310.12(1); 310.12(9). If an inmate fails to properly complete each of these steps, he has not exhausted his administrative remedies. Pozo, 286 F.3d at 1025.

2. *The Court's Analysis*

The plaintiff first argues that he addressed the lack of medical care for his diabetic attack in inmate complaint number OSCI-2017-14460. Dkt. No. 26 at 2. He says he complained about the defendants forcing milk and jelly down his throat and that they did not get HSU staff or an ambulance. Id. Second, he contends he followed the process: "I've done everything I've been inform I must

6

do. I follow all steps . . .." Id. at 2-3. The plaintiff has offered no admissible evidence supporting either contention, either by sufficiently responding to the defendants' proposed findings of fact as required by Civil L.R. 56(b)(2)(b) or by submitting an affidavit or other sworn statement that tells his side of the story. Thus, as mentioned above, the court may consider the defendants' facts undisputed. Civil L.R. 54(b)(4).

The defendants submitted a true and correct copy of inmate complaint number OSCI-2017-14460. Dkt. No. 28-1 at 6. The inmate complaint primarily focuses on an unnamed officer who allegedly pulled one of the plaintiff's dreadlocks out. Id. While the plaintiff did mention a diabetic attack due to low blood sugar, he made that mention in the context of explaining what happened when the plaintiff attempted to resolve the hair-pulling issue. Id. The complaint does not say that the defendants force-fed the plaintiff milk and jelly. It also does not say that the defendants failed to get HSU staff involved or call an ambulance. It does not say that the plaintiff felt he needed medical help, or say that the defendants refused to get medical help for him.

Inmate complaints, as the inmate complaint form itself makes clear, are limited to one issue. The one issue the plaintiff addressed in OSCI-2017-14460 was the officer pulling out his hair. While the complaint admittedly is somewhat disjointed, it appears that the plaintiff explained that the hair-pulling incident wasn't resolved because Columbia staff dropped his Temporary Lock Up status because they figured out he was having a diabetic attack. He seems to be explaining that staff concluded that whatever he did that got him put in TLU wasn't his fault; it was due to his low blood sugar. Nothing about this description hints that the plaintiff was complaining that Columbia staff had failed to address his serious medical need.

7

The plaintiff's §1983 claim is that the defendants were deliberately indifferent to his medical need because they failed to get HSU staff or an ambulance to address his diabetic attack. Inmate complaint OSCI-2017-14460 does not address this. The plaintiff has not identified any other inmate complaint that could potentially address the alleged failure to provide medical care on March 3, 2017. The only complaint that relates to March 3 is OSCI-2017-14460, and that complaint mentions nothing about failure to provide medical care. The plaintiff cannot show that he exhausted his administrative remedies, because he did not file an inmate complaint alleging that Columbia staff failed to provide him with medical care for his diabetic attack on March 3, 2017.

Even if OSCI-2017-14460 had complained about the defendants' failure to provide medical care for a diabetic attack, the plaintiff could not show that he exhausted his remedies, because he didn't complete the administrative process. The plaintiff has presented no evidence that after the reviewing authority dismissed his complaint, he appealed the decision to the Corrections Complaint Examiner, which Wis. Admin. Code §§DOC 310.12(1) and 310.12(9) require. While he asserts that he has followed all the steps and procedures, there is no evidence to support that assertion.

The plaintiff has failed to exhaust his administrative remedies, and the court will grant summary judgment in favor of the defendants.

### III. CONCLUSION

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 17.

The court **ORDERS** that this case is **DISMISSED** for the plaintiff's failure to exhaust his administrative remedies and will enter judgment accordingly.

8

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 13th day of March, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**